**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ENDEAVOR CAPITAL LLC d/b/a<br>GRANNY8 MORTGAGE,<br><br>                    Plaintiff,<br><br>  v.<br><br>CREDIT KARMA, INC.,<br><br>                    Defendant. | Case No. 4:14-cv-00397 |

**CREDIT KARMA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE § 12(b)(6)**

# INTRODUCTION

Credit Karma, Inc. ("Credit Karma") airs a national television commercial featuring an animated figure who calls herself "Grandma" and narrates her experience in selecting Credit Karma's services to obtain her free credit score. Credit Karma has also run a similar commercial featuring an animated figure who calls himself "Grandpa." Plaintiff asserts that these animated grandparents infringe its rights in its GRANNY trademarks. It exalts the value of unique cartoon mascots across industries and claims that its use of a cartoon mascot in the financial services industry is equally unique. Plaintiff's attempt to place its GRANNY character among the ranks of truly famous cartoon mascots such as the Geico Gecko®, Ronald McDonald®, and Jack of Jack-in-the-Box® is misguided. (*See* Plaintiff's Complaint for Injunctive and Other Relief ("Compl.") ((ECF. No 1) ¶ 1.)

Indeed, the Complaint has numerous deficiencies. As a threshold matter, all of the claims fail because Plaintiff has not and cannot allege that Credit Karma's animated grandparents serve a source-identifying, i.e., trademark, function in its commercials. Should the Court disagree and find trademark use, Plaintiff's Complaint fails on other grounds. Counts I, III, and IV fail to state a claim for the asserted word marks because Plaintiff cannot plausibly claim that the use of animated grandparents is likely to cause confusion with its alleged rights in GRANNY8, 1-800-GRANNY-8, and FOR A GREAT RATE . . . GRANNY8. Counts II and V fail in their entireties because Plaintiff cannot plausibly claim that any of its asserted marks is strong and distinctive under the Missouri dilution statute, let alone famous among the general consuming population of the United States, as required under the federal dilution statute.

# FACTUAL BACKGROUND

Credit Karma has its principal place of business in San Francisco, California. (Compl. ¶ 9.) Plaintiff has its principal place of business in St. Louis, Missouri. (*Id.* ¶ 8.)

Plaintiff asserts ownership of four registered trademarks: GRANNY8, 1-800-GRANNY-8, and FOR A GREAT RATE . . . GRANNY8 (collectively, "Plaintiff's Word Marks"), and a depiction of an elderly woman called "Granny" with an apron that reads "Homestead Mortgage" (collectively with Plaintiff's Word Marks, the "GRANNY8 Marks"). (*Id*. ¶ 19.) The Complaint shows a similar woman wearing an apron that reads "Granny8 Mortgage," but Plaintiff alleges no facts to establish that it owns that mark. (*Id*. ¶ 17.)

In November 2013, Plaintiff learned of Credit Karma's commercial in which an animated grandmother describes her experience using Credit Karma's services (the "Grandmother Commercial"). (*Id*. ¶ 24;[1] Ex. 1—Credit Karma's Grandmother Commercial.)[2,3] This character is called "Grandma." (Compl. ¶ 24.) Credit Karma also has a commercial in which an animated grandfather appears ("the Grandfather Commercial"). (*Id*. ¶ 26; Ex. 2—Credit Karma's Grandfather Commercial.)[4]

Credit Karma does not use the term GRANNY or any variation of Plaintiff's Word Marks in its commercials at issue here. (Exs. 1-2.) Instead, the Grandmother Commercial shows a common archetype—a grandmother figure who might be expected to have difficulty navigating a new online service—urging her family to try Credit Karma's services because she found them to be so easy to use and truly free. (*Id.*) The commercial starts off "Hi there, it's your grandma," and then Grandma contrasts her experiences with a competing credit monitoring service. (*Id.*)

---

[1] The Complaint repeats paragraph numbers 23 through 25. These repeated paragraphs contain additional facts and allegations. Both references to ¶ 24 made here refer to ¶ 24 on page 6 of the Complaint.

[2] The Court may take judicial notice of materials that are "incorporated by reference" in the Complaint and that form the basis of the plaintiff's allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). The parties conferred on March 28, 2014 and Plaintiff has reviewed Exhibits 1 and 2 and confirmed that they are true and correct copies of the Credit Karma commercials cited in its Complaint. (Compl. ¶¶ 25-26.)

[3] Exhibit 1, Credit Karma's Grandmother Commercial, can also be viewed at *Grandma, – Credit Karma Commercial*, YOUTUBE, http://www.youtube.com/watch?v=0WVF9L-Z5FM (last visited March 28, 2014).

[4] Exhibit 2, Credit Karma's Grandfather Commercial, can also be viewed at *Grandpa Rant – Credit Karma Commercial*, YOUTUBE, http://www.youtube.com/watch?v=Lu8dhfDcjcE (last visited March 28, 2014).

**LEGAL STANDARD**

A motion to dismiss must be granted when a party fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking relief must "include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007)). Under this standard, the pleading party must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Furthermore, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal citation omitted). To survive a motion to dismiss, plaintiffs must "nudge[] their claims across the line from the conceivable to plausible." *Twombly*, 550 U.S. at 570.

**ARGUMENT**

Although courts have not traditionally dismissed trademark complaints that contain at least conclusory statements corresponding to each of the elements of the asserted claims, in recent years, courts have started to dismiss complaints that contain formulaic allegations of key elements where those allegations are merely conclusory statements, with insufficient factual support. For example, in *Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.*, 707 F.3d 869 (7th Cir. 2013), where the proprietor of rap group Phifty-50 sued a motion picture company for infringement for its film titled "50/50," the Seventh Circuit affirmed the dismissal of the complaint, finding that "this complaint fails at the threshold: it does not allege that the use of '50/50' as a title has caused any confusion about the film's source—and any such allegation would be too implausible to support costly litigation." *Id*. at 871 (*citing Iqbal*, 556 U.S. 662 and *Twombly* 555 U.S. 544). The court

3

noted that the plaintiff did not allege that a single customer or potential customer had expressed confusion, and that a trademark claim is only appropriate where it can be supported by confusion about origin, which was implausible. *Id*. at 871-72.

Plaintiff's claims should fare no better in this case, as they are simply implausible.

I. **PLAINTIFF CANNOT PLAUSIBLY ALLEGE THAT CONSUMERS WILL VIEW CREDIT KARMA'S GRANDPARENTS AS SOURCE IDENTIFIERS (ALL COUNTS)**

The law of trademarks is designed to protect the public from being deceived as to the origin of a particular article or service. *See Council of Better Bus. Bureaus, Inc. v. Bailey & Assocs., Inc.*, 197 F. Supp. 2d 1197, 1213-14 (E.D. Mo. 2002). "The ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999). There will be no such confusion here because Credit Karma's grandparents do not serve source-identifying functions—rather, they function as narrators telling their stories about how easy Credit Karma's services are to use, like myriad other narrators that consumers see in nearly every commercial that airs on television. The mere presence of a character or person in a television commercial—or in any other expressive work—cannot be actionable under the Lanham Act unless the consuming public perceives the character or person as a source identifier. This is not plausible here.

*Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990), demonstrates the challenges of establishing trademark use where the defendant is accused of using an infringing image, rather than a word mark or logo. In *Pirone*, the Second Circuit affirmed the lower court's finding that the defendant's photographs of Babe Ruth in a calendar were not a trademark use and could not form the basis for an infringement claim. *Id*. at 581-85. The court stated that the defendant's use of Ruth's name and image could infringe the plaintiff's rights "only if that use was a 'trademark use,'

4

that is, one indicating source or origin," and that "[i]t cannot be said that every photograph of Ruth serves [an] origin-indicating function." *Id*. at 583. The court found that the photographs in the calendar "identify great baseball players and by so doing indicate the *contents* of the calendar, not its source." *Id*. at 584 (emphasis added). Furthermore, the source of the calendar was "clearly indicated by the numerous, prominent references" to the defendant publishing company. *Id*. For these reasons, the court concluded that the plaintiff "cannot possibly show confusion as to source or sponsorship." *Id*. at 585.

The same reasoning led to a similar result in *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067 (C.D. Cal. 2012). In that case, the plaintiff owned the word mark BETTY BOOP and alleged that defendants' use of the image of the Betty Boop character on posters, dolls, and apparel infringed its rights. *Id*. at 1070. The court found, "[i]mportantly, the question of confusing similarity does not arise unless the defendant's use of the picture in question is in a trademark manner." *Id*. at 1077 (internal quotation omitted). The court then noted that "Betty Boop does not look the same on all of Defendants' goods" and held that "[d]efendants' use of the image is not source-identifying, and is not a trademark use." *Id*. at 1078.

As in *Pirone* and *Fleischer*, Credit Karma's use of grandparents in its commercials is not a source-identifying use. The grandparents are merely part of the content of the commercials, telling their stories about their experiences with Credit Karma's services. The commercials clearly promote Credit Karma as their source—prominently displaying "CreditKarma.com," the Credit Karma logo, or a screenshot of a simulated version of the website displaying the name "Credit Karma" throughout the commercials. (Exs. 1 and 2.) It is simply not plausible that consumers will view the grandparents as source identifiers and confuse the source of the clearly labeled Credit Karma commercials. Plaintiff's Complaint should be dismissed in its entirety.

5
sf-3398300

## II. PLAINTIFF CANNOT PLAUSIBLY CLAIM THAT CREDIT KARMA USES PLAINTIFF'S WORD MARKS (ALL COUNTS)

Plaintiff's allegation that Credit Karma infringed its word marks is equally implausible and each of these claims should be dismissed as to its asserted word marks. Most significantly, Plaintiff has not alleged and cannot allege that Credit Karma has actually used any of Plaintiff's word marks in its commercials; instead, it alleges only that Credit Karma's commercials have grandparent characters, which it claims infringes or dilutes its word mark rights.

The Southern District of New York dismissed word mark infringement claims under similar circumstances. In *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510 (S.D.N.Y. 2012), the plaintiff was a street performer who plays guitar and "dresses as a cowboy—only a virtually Naked one" appearing in briefs, cowboy hat, and cowboy boots. *Id*. at 512-13 (internal quotation omitted). The plaintiff owned the registered word mark NAKED COWBOY, which appeared on his only article of clothing, his briefs. The defendant, a television network, aired a show in which a character appeared in only his briefs, cowboy hat, and cowboy boots, playing guitar. *Id*. at 513. The plaintiff sued for trademark infringement. The court granted defendant's motion to dismiss, relying on the fact that at no point in defendant's show were the words "naked cowboy" uttered or displayed: "None of the contents of the Episode could have violated Plaintiff's trademark rights because the word mark 'Naked Cowboy' does not appear anywhere in it." *Id*. at 515. The court dismissed the complaint for failure to state a claim for trademark infringement. *Id.* at 515-16.

The situation is no different here. Not only are the words GRANNY8, 1-800-GRANNY-8, or FOR A GREAT RATE . . . GRANNY8 never uttered in Credit Karma's commercials, the grandmother in Credit Karma's Grandmother Commercial does not even refer to herself as "granny." The commercial opens with the grandmother saying, "Hi there, it's your grandma." (Ex. 1.) When the grandmother opens her simulated Credit Karma account on screen, the page

reads: "Welcome Back, Grandma." (*Id.*)  It is implausible to assert that the Grandmother Commercial infringes the marks GRANNY8, 1-800-GRANNY-8, or FOR A GREAT RATE . . . GRANNY8, or even any portion of those marks.

### III. PLAINTIFF CANNOT PLAUSIBLY ASSERT THAT CREDIT KARMA'S GRANDPARENTS ARE CONFUSINGLY SIMILAR TO ITS WORD MARKS (COUNTS I AND III) [5]

Trademark infringement lies where the use of a term, logo, or other symbol is likely to confuse the public as to the source of its goods or services.  *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987).  Plaintiff cannot plausibly allege that the public will be confused as to the source of Credit Karma's services because of commercials that include animated grandparents.

The case law is clear that no trademark infringement can be found when a word mark is asserted against a visual depiction where the accused advertisement does not "literally portray[ ] the entirety of a word mark."  *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1228 (C.D. Cal. 2004), *aff'd*, 114 F. App'x 921 (9th Cir. 2004) (citations omitted).  In *Moose Creek*, the plaintiff alleged that Abercrombie & Fitch infringed rights in the MOOSE CREEK mark through use of a "moose logo."  To make this argument, the plaintiff also had to argue that the MOOSE element was the dominant portion of the MOOSE CREEK mark to downplay the distinguishing CREEK element.  *Moose Creek*, 331 F. Supp. 2d at 1228.  The court denied the plaintiff's motion for a preliminary injunction, distinguishing other cases where equivalency had been found by noting that "none of the cases . . . uses this two-step logic (which relies on both the doctrine of dominance and the doctrine of picture-word equivalency)."  *Id.*

---

[5] Because the analyses required for a claim under the Lanham Act Section 32 for trademark infringement and under Section 43(a) for unfair competition are identical, they are addressed together.  *See Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759 (8th Cir. 2005) ("[S]ection 43 of the Lanham Act grants to qualifying unregistered marks comparable protection from infringement and unfair competition.").

("There is no basis in the record to find that somehow a picture of a moose and the words 'Moose Creek' would actually leave Plaintiffs' sophisticated customers with a similar mental impression and therefore cause them to confuse the parties' clothing lines.").

Plaintiff must rely on exactly the same two-step logic rejected by the court in *Moose Creek*, namely, that the GRANNY element is the dominant portion of each of the three word marks *and* that consumers will view the words GRANNY 8, FOR A GREAT RATE . . . GRANNY8, and 1-800-GRANNY8 as equivalent to a depiction of a grandmother archetype who identifies herself only as "your Grandma." Plaintiff's claim that consumers will be confused as to the source of Credit Karma's services due to the presence of an animated grandparent figure in a commercial is simply implausible.

In fact, Plaintiff's argument that its GRANNY word marks give it the right to stop all depictions of grandmothers is akin to an argument rejected by other courts when the owner of a word mark consisting of a person's name has tried to assert trademark rights over all photographs and depictions of that person. In *Pirone*, the court rejected the plaintiffs' argument that their registered BABE RUTH word mark for paper goods could be a basis to enjoin sales of a calendar that included three photographs of Babe Ruth because the federal registration did not give them rights in the image of Babe Ruth. 894 F.2d at 582 ("Pirone would have us read her rights in that word mark to include every photograph of Ruth ever taken. We decline to do so."). Similarly, in *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148, 1159 (D. Nev. 2010), the court rejected plaintiff's claim that the use of a photograph of Bob Marley on a t-shirt infringed its registered rights for BOB MARLEY for t-shirts because "Plaintiff's registered mark BOB MARLEY does not grant Plaintiffs a trademark in any and all photographs of Marley."

The court characterized the *Pirone* plaintiffs' assertion of rights in every photograph of Babe Ruth as a "sweeping contention." 894 F.2d at 583. Plaintiff's claim to rights over every grandparent figure is an even more "sweeping contention" than that rejected in *Pirone*, as there has been only one Babe Ruth, limiting the universe of images over which those plaintiffs sought exclusivity. There is, however, no single "granny"; grandmothers can be depicted in various ways. Owning a trademark containing the word GRANNY cannot give the owner exclusive rights over all images of elderly women—any more than owning a trademark for the word BIRD can give the owner exclusive rights over all images of birds. *See Fisher Radio Corp. v. Bird Elec. Corp.*, 1969 WL 9101 (T.T.A.B) (finding no equivalency between the word BIRD and an image of a bird where "the term 'BIRD' is a word which broadly encompasses an extremely wide range of feathered vertebrate, including an ostrich, hummingbird, and a chicken").

Finally, examination of the few cases where courts have found trademark infringement based upon word-picture equivalency highlights the deficiencies of Plaintiff's claim—because in each of those cases one of the parties was using an image as its logo and the other party was using the equivalent word as a trademark. *Mobil Oil Corp. v. Pegasus Petroleum Corp.* is the leading case in the area. In that case, plaintiff Mobil used a well-known "flying horse," representative of the winged horse of Greek mythology, as its logo at all of its service stations. 818 F.2d 254, 255 (2d Cir. 1987). The court found that Mobil Oil's "flying horse" logo was undisputedly "a very strong mark." *Id.* at 256. The defendant chose as its name "Pegasus Petroleum," and Mobil Oil sued, claiming that there was a likelihood of confusion between its "flying horse" logo and the "Pegasus Petroleum" trade name. *Id.* The district court found infringement. On appeal, the defendant criticized the district court for "blindly equating the word 'Pegasus' with its pictorial representation—Mobil's flying horse," but the Second Circuit found ample support in the record

9

for the district court's conclusion that Mobil's "symbol of the flying horse and its name 'Pegasus' are synonymous." *Id.* at 257. There was a similar outcome in *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973), where the plaintiff owned rights in the mark BEER NUTS and the defendant used a picture of an overflowing beer stein on its packages of nuts. Again, as in *Mobil Oil*, one party was using a word as a trademark and the other party was using a pictorial representation of that word as a trademark.

Neither of these cases involved the use of an animated character in a commercial—they involved the use of a picture *as a logo*. This is a significant difference, as has been noted by numerous courts. In *Fleischer*, the court found that the doctrine of word-picture equivalency was not even "triggered" because the defendant's use of images of Betty Boop did not appear to be "true picture marks" (i.e., logos):

> Plaintiff has not even argued, let alone shown, that Defendants' use of the Betty Boop image is a trademark use such that it may be deemed the legal equivalent of the Betty Boop word mark. For example, those cases in which "the owner of a word mark received protection against infringing use of a picture mark, or vice versa, involved a true picture mark, a single pictorial representation used repeatedly as an indication of origin."

*Fleischer*, 925 F. Supp. 2d at 1078 (citing *Pirone*, 894 F.2d at 582); *accord Fifty-Six Hope Road*, 688 F. Supp. 2d at 1160 ("The pictorial equivalent cases are limited to a true picture mark consisting of a single pictorial representation used repeatedly as an indication of origin.").

In sum, Plaintiff can allege no facts that make plausible an allegation of likelihood of confusion between its word marks and Credit Karma's grandparent characters.

### IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR FEDERAL TRADEMARK DILUTION (COUNT II)

The Lanham Act requires that: (i) the plaintiff's mark is famous and distinctive; (ii) the defendant uses the mark in commerce; (iii) the defendant's use began after the plaintiff's mark achieved fame; and (iv) the defendant's use is likely to cause dilution of the plaintiff's mark.

10

15 U.S.C. § 1125(c)(1). Plaintiff cannot meet any of these elements but fails most spectacularly with its bare assertion that "[t]he GRANNY8 marks (including the GRANNY character) have become famous and distinctive."[6] (Compl. ¶ 23.)[7] Fame requires that the mark be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Four statutory factors are used to analyze fame: (i) the duration, extent, and geographic reach of advertising of the mark; (ii) the amount of sales of the goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) registration of the mark (*id.*), yet Plaintiff's only allegation concerning the first three of these factors is a single reference to marketing and providing services for "more than a decade." (Compl. ¶ 15.) Plaintiff cannot plausibly allege that *any* of its marks has sufficient advertising, sales, and recognition "by the general consuming public of the United States," so it merely states that the marks *are* famous—a classic *ipse dixet* statement.

It is well settled, however, that mere conclusory statements that a mark is "famous" are grounds for dismissal of a federal dilution claim. For example, in *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, where the complaint made only conclusory allegations that various trademarks and trade dress for baby products were famous, the court dismissed the claims, reasoning:

> The more general allegations that plaintiffs [sic] products' "designs, trademarks and/or trade dress have all become widely known throughout the United States and worldwide, and associated with Plaintiffs," . . . and "Plaintiffs' products are among the most popular and well known products in their industry, and their line of products is famous throughout the country and world," . . . are conclusions . . . and therefore do not support the allegation that the marks in suit are famous.

---

[6] As discussed *supra* at Section III, Plaintiff cannot plausibly claim that Credit Karma's commercials are likely to be confused with any of Plaintiff's GRANNY8 Marks, let alone that they use or dilute Plaintiff's Marks. *See Sensient Techs. v. SensoryEffects Flavor*, 613 F.3d 754 (10th Cir. 2010) (holding that marks that are not confusingly similar to the plaintiff's marks *cannot* be dilutive of the plaintiff's marks). As for the third element, because Plaintiff cannot plausibly claim that its GRANNY8 Marks are famous, it also cannot plausibly claim that they achieved fame before Credit Karma's commercials first aired.

[7] Credit Karma's reference is to ¶ 23 beginning on page 5 of the Complaint.

841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (citing *Iqbal,* 556 at 678). "A claim for trademark dilution . . . will survive a motion to dismiss only when the plaintiff has ple[d] enough facts to show that its dilution claim is facially plausible." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (internal quotation omitted) (dismissing claim where plaintiff's allegations of fame would not support a federal dilution claim).

Plaintiff's allegations here are equally conclusory: (i) the GRANNY8 Marks "have become famous" (Compl. ¶ 23),[8] and (ii) the GRANNY8 Marks "are 'famous marks' within the meaning of §43(c) of the Lanham Act." (*Id.* ¶ 36.) Plaintiff alleges no facts to support these conclusions of law. Plaintiff fails even to allege that its marks are "widely recognized by the general consuming public of the United States," as the statute requires. "National renown is an important factor in determining whether a mark qualifies as famous under the FTDA." *Boston Granite Exch., Inc. v. Greater Boston Granite, LLC*, 2012 WL 3776449, at *5-6 (D. Mass. Aug. 29, 2012) (internal quotation omitted) (dismissing claim because plaintiff did not allege that its mark is "recognized by the general consuming public of the United States, nor does it offer facts that reasonably support such an inference"); *Helios*, 2013 WL 3943267, at *10 (dismissing claim where plaintiffs "made a conclusory allegation that [their marks] are 'famous,'" but did not "allege that these marks are 'widely recognized by the general consuming public of the United States'").

In *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, 2013 WL 6670584, at *7 (S.D.N.Y. Mar. 29, 2013), the court cited *Iqbal* and found that the plaintiffs' "general allegations that their Marks have 'fostered wide renown [sic] with the trade and public' and have 'great value and secondary meaning among the consuming public' . . . are labels and conclusions not entitled to a presumption of truth." The court granted the motion to dismiss even though the plaintiffs alleged

---

[8] Credit Karma's reference to Plaintiff's Complaint is to ¶ 23 beginning on p. 5.

facts supporting their claim of fame—including a claim of fourteen business locations, services provided to at least 16,000 people, and the operation of one subsidiary for over 100 years. *Id.* The court found that these allegations "at best, make it plausible that their Marks are recognized within the niche market of forprofit [sic], post-secondary schools," but are not on par with truly famous marks entitled to anti-dilution protection, such as Dupont, Buick, and Kodak and other marks "almost universally recognized by the general public." *Id.* (internal quotation omitted).

Plaintiff alleges far less than the *Boarding School* plaintiff; its claim should likewise be dismissed. *See Plumeus, Inc. v. Intersog LLC*, 2013 WL 5609331, at *2 (N.D. Ill. Oct. 11, 2013) (internal quotation omitted) (finding plaintiff's allegations that it had "invested substantial resources" in marketing under its marks and that its marks had "become famous" to be "insufficient, within the meaning of *Twombly*, to suggest that plaintiff's marks are household names"). As in *Plumeus*, Plaintiff merely makes the sweeping statement that it has "invested and continues to invest substantial resources in promoting its services under the various GRANNY8 marks" (Compl. ¶ 21) and that its marks are recognizable through "widespread use and promotion" (*id.* ¶ 22).

Plaintiff's marks have at most niche fame among purchasers of its services in the regions where it operates,[9] though Plaintiff does not even allege as much. However, even if it did, niche fame is insufficient to find a mark famous under federal law: "[A]s courts have noted, the inclusion . . . of the phrase 'widely recognized by the general consuming public of the United States' was intended to reject dilution claims based on niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region." *Luv N' Care*, 841 F. Supp. 2d at 757-58 (internal quotation omitted); *see also Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, 509 F.3d

---

[9] Significantly, although Plaintiff offers services that require state licenses, the Complaint includes no allegations regarding where Plaintiff is licensed or where it can advertise and offer its services.

380, 384 (7th Cir. 2007) (noting that the 2006 amendment to the FTDA "eliminated any possibility of 'niche fame'").

Because Plaintiff's Complaint sets forth only bare conclusions of fame, and alleges no facts to render those conclusions plausible, the dilution claim should be dismissed.

V. **PLAINTIFF FAILS TO STATE A COMMON LAW CLAIM FOR UNFAIR COMPETITION FOR ITS WORD MARKS (COUNT IV)**

"Missouri law is well settled that the same facts which support a suit for trademark infringement support a suit for unfair competition and common law infringement." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1010 (8th Cir. 2011) (internal quotation omitted). As explained above in Sections I-II, Plaintiff fails to allege any plausible set of facts under which Credit Karma's commercials could infringe Plaintiff's marks. Plaintiff's common law unfair competition claim should be dismissed.

VI. **PLAINTIFF FAILS TO STATE A CLAIM FOR DILUTION UNDER MISSOURI LAW (COUNT V)**

"The gravamen of a dilution complaint is that the [defendant's] continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that . . . the plaintiff's mark will eventually be deprived of all distinctiveness." *Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.*, 426 F.3d 1001, 1011 (8th Cir. 2005) (internal quotation omitted). Three elements are required to establish a Missouri state dilution claim: (i) the plaintiff owns a valid common law mark; (ii) its mark is distinctive; and (iii) the defendant uses the mark and that use is likely to cause dilution of the plaintiff's mark. *See Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 758 F. Supp. 512, 527 (E.D. Mo. 1991)

*aff'd*, 989 F.2d 985 (8th Cir. 1993). Plaintiff cannot plausibly claim that these elements exist here.[10]

Although Missouri's dilution statute does not require fame per se, it is limited to marks that are distinctive and "particularly strong." *Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 992 (E.D. Mo. 2004). Plaintiff has made conclusory statements that its GRANNY8 Marks are "strong" and "famous" (Compl. ¶¶ 22-23),[11] but has alleged no facts that support its claim that the GRANNY8 Marks are strong. In fact, there are no allegations whatsoever regarding Plaintiff's use of the 1-800-GRANNY-8 and FOR A GREAT RATE . . . GRANNY8 marks. As for the GRANNY8 mark, Plaintiff only makes the barebones allegation that "[f]or more than a decade, [Plaintiff] has marketed and provided these services under the mark GRANNY8." (Compl. ¶15.) Plaintiff's allegation regarding the GRANNY character is equally sparse: "[t]hroughout that period, [Plaintiff] has continuously marketed these services through use of a Cartoon Grandma character named Granny . . . . The GRANNY Character has served as [Plaintiff's] main trademark and as its principal spokesperson in its television commercials." (*Id.* ¶ 16.) With no specifics regarding the use or recognition levels of each of these marks, Plaintiff's claim that they are strong marks is simply not plausible.

## CONCLUSION

For the foregoing reasons, Credit Karma respectfully requests the Court dismiss the Complaint in its entirety without leave to amend.

---

[10] As discussed above, Plaintiff's dilution claim also fails in its entirety because of its failure plausibly to show that Credit Karma has "used" any of Plaintiff's marks as source identifiers. See Section I and II, above.

[11] Credit Karma's reference is to ¶¶ 22-23, beginning on page 5 of the Complaint.

sf-3398300

Dated: March 28, 2014                ARMSTRONG TEASDALE LLP


By:   */s/ Jennifer E. Hoekel*
    Jennifer E. Hoekel, #45880
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Telephone: 314.621.5070
    Email: jhoekel@armstrongteasdale.com


Dated: March 28, 2014                MORRISON & FOERSTER LLP


By:   */s/ Jennifer LeeTaylor*
    Jennifer Lee Taylor (CA Bar No. 161368)
     *(admission pro hac vice pending)*
    Taryn S. Rawson (CA Bar No. 277341)
     *(admission pro hac vice pending)*
    Sabrina Larson (CA Bar No. 291661)
     *(admission pro hac vice pending)*
    425 Market Street
    San Francisco, CA 94105
    Telephone: 415.268.7000
    Email: JTaylor@mofo.com
    Email: TRawson@mofo.com
    Email: SLarson@mofo.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2014, I electronically filed the foregoing document via the Court's CM/ECF system to be served upon all counsel of record in this matter.

                                                    */s/ Jennifer E. Hoekel*
                                                      Jennifer E. Hoekel